UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NANCY ALBRIGHT and SARAH RODHOUSE, individually and as the representatives of a class of similarly situated persons,<br><br>    Plaintiffs,<br><br>v.<br><br>THE BI-STATE DEVELOPMENT AGENCY OF THE MISSOURI–ILLINOIS METROPOLITAN DISTRICT d/b/a METRO,<br><br>    Defendant. | Case No. 4:11CV01691 AGF |

**MEMORANDUM AND ORDER REGARDING ATTORNEY'S FEES**

This matter is before the Court on the motion of Plaintiffs Nancy Albright and Sarah Rodhouse, individually and as the representatives of a class of similarly situated persons, for approval of their requests for attorney's fees on behalf of Plaintiffs' counsel ("Class Counsel"), costs and incentive payments to each of the class representatives.

The motion is fully briefed and the parties presented argument to the Court at a fairness hearing on July 29, 2013. Defendants do not object to the amounts proposed for costs and incentive payments. In the absence of objection by Defendant, the Court will award Plaintiffs the requested costs in the amount of $14,022.21. Plaintiffs have also presented evidence regarding the contributions made by the named class representatives to the action, and the time commitment involved. The Court does not believe that such incentive payments should be granted simply as a matter of course. In light of the

evidence presented in this case, however, the Court shall also approve an incentive award of $2,500.00 to each of the class representatives, based on their contributions to the case.

Class Counsel, Matthew Armstrong, Richard Doherty and Chant Yedalian, have presented the Court with a request for fees in the amount of $408,764.59. Defendants seek a 75% reduction in the amount of attorney's fees contending that the hours billed and the rates charged are unreasonable in light of the simplicity of the case and the value of the relief obtained in the settlement, $742.50, as compared to the requested fee award.

For the reasons set forth below, the Court approves a reduction in the amount of attorney's fees and awards $176,541.50.

## I.     **Background**

Class Counsel, Matthew Armstrong, Richard Doherty and Chant Yedalian, move for an award of attorney's fees in the amount of $408,764.59. In this case, Plaintiffs asserted a single claim against Defendant, the Bi-State Development Agency of the Missouri – Illinois Metropolitan District ("MetroLink"), for violation of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681(c)(g)(1), a provision of the Fair Credit Reporting Act ("FCRA"). The remedies available under the FCRA apply to claims under the FACTA and are embodied in 15 U.S.C. § 1681n. *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 715 (9th Cir. 2010). "[I]n the case of any successful action," the FCRA expressly provides for an award of "reasonable attorney's fees as determined by the court." 15 U.S.C. § 1681n(a)(3).

This case was filed in the Circuit Court for the City of Saint Louis on August 15, 2011. Counsel took the case on contingent fee basis and all three firms have been

involved in the case since the outset. Plaintiffs assert that the settlement of this action was the "culmination of nearly two years of research, investigation, evaluation and litigation . . . at a very significant risk." (Doc. No. 53 at 1.) The record establishes, however, that within hours of the filing of the suit, MetroLink ceased its alleged illegal conduct, the disclosure of credit card expiration dates on credit card receipts for the purchase of MetroLink tickets. In light of this prompt response, Plaintiffs assert that they achieved the FACTA's statutory goal, protection from the risk of identity theft. The complaint alleged not only a technical but also a willful violation of the FACTA, but the parties also now acknowledge that Defendant committed only a technical violation of the statute and that there was no evidence of actual damages or willful conduct.

Defendant removed the case to this Court on September 28, 2011. Thereafter the parties engaged in some limited discovery and fully briefed a motion to dismiss. The motion to dismiss alleged that Plaintiffs' complaint did not meet the requirements under *Twombly* and *Iqbal* for alleging willfulness under FACTA. Soon after briefing on the motion to dismiss was completed, the parties engaged in mediation. On March 23, 2012, in a day-long, Court-ordered mediation session, the parties achieved a settlement in principle of the class claims, but did not resolve the matters of attorney's fees and incentive payments. The parties thereafter requested a stay of all proceedings to permit them to continue their settlement discussions. In light of the parties' settlement discussions, the motion to dismiss was dismissed without prejudice, to be refiled if necessary.

To address the logistics of finalizing the settlement, incentive payments and attorney's fees, the parties participated in another day-long mediation session on July 11, 2012. From that date until March 4, 2013, when they requested Court approval of the final Settlement, the parties' principal efforts in the case focused on their unsuccessful attempt to resolve the issue of attorney's fees. The parties resolved the substantive issues in the case after approximately seven months and then spent the next year finalizing the settlement agreement and attempting to reach agreement on attorney's fees. Despite this significant investment of time, the parties ultimately failed to resolve the fee issue. *See* Settlement Agreement (Doc. No. 50-1, § 2.4.1.)

The terms of the settlement were communicated to the class pursuant to a plan negotiated by the parties and preliminarily approved by the Court on March 4, 2013. (Doc. No. 51.) Defendant published the notice of settlement, prominently posted the settlement notices on MetroLink ticket vending machines, and kept the notices in place through the claims submission deadline. Defendant also established a website that contained all the settlement information, permitted the filing of electronic claims, and established a toll-free telephone number for use by class members seeking additional information. Having executed these measures, the parties received fifty-two claims and no requests to opt out of the settlement or objections to its terms.

The action resulted in the correction of a technical violation of the FACTA and provided compensation to claiming class members of either $30 in cash or up to a $72 value in MetroLink tickets. Of the fifty-two class submitted claims, eight were rejected for inadequate documentation and one claim was initially rejected as untimely. At the

July 29, 2013 hearing, the parties agreed to accept and pay the untimely claim. Thus, at the time of final approval, forty-four claimants were approved to receive a total of $742.50 either in cash or in ride tickets, as a result of the settlement.

The Settlement Agreement provides for attorneys' fees, expenses, and incentive awards to be paid separately by Defendant so as to not diminish the relief provided to the Class and permits Class Counsel to petition the Court for an award of reasonable attorneys' fees and expenses. (Doc. No. 50-1, § 2.4 & § 2.7.)

## II.     Applicable Law

The general principles governing an award of attorney's fees are well settled. "A request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). It is preferable that the litigants settle on the amount of a fee. Where settlement is not possible, the party seeking fees bears the burden of establishing and documenting the time reasonably expended on the case and reasonable hourly rates.[1] *Hensley,* 461 U.S. at 433 & 437.

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

---

[1]   *Hensley* involved an award of attorney fees under 42 U.S.C. § 1988, but the *Hensley* Court clearly stated that "[t]he standards set forth [here] are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley*, 461 U.S. at 433 n. 7 (internal quotation s omitted).

> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary.

*Quigley v. Winter*, 598 F.3d 938, 956-57 (8th Cir. 2010) (quoting *Hensley,* 461 U.S. at 433) (internal citations omitted); *see also Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). If the plaintiff satisfies this burden and demonstrates to the court's satisfaction that the hours claimed and the hourly rates are reasonable, the lodestar "'provides an objective basis on which to make initial estimate' of the value of a lawyer's services." *Hensley,* 461 U.S. at 433.

Calculation of the lodestar does not, however, end the inquiry. *Id.* at 434. Various considerations may lead a district court to adjust the fee upward or downward," but many of these considerations will have been "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley,* 461 U.S. at 434 & n. 9 (internal citation omitted); *see also Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673 (2010). The factors to be considered are:

> (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases.

*St. Louis Fire Fighters Ass'n*., 96 F.3d 323, 332 n. 10 (8th Cir. 1996); *see also Thorne v. Welk Inv., Inc*., 197 F.3d 1205, 1213 (8th Cir. 1999).

### III.  Discussion

#### A.  Plaintiffs' Lodestar Calculation

Here Plaintiffs seek a fee award of $408,764.59; the lodestar is derived using the amounts set forth below:

| | |
|---|---|
| Armstrong Law Firm: | 205.20 hours x $650.00 per hour = **$133,380.00** |
| Bock Law Firm, LLC | 383.40 hours x $408.88 per hour = **$156,764.59** |
| Chant and Co. | 215.42 hours x $550.00 per hour = **$118,481.00** |
| | **Lodestar = $408,764.59** |

Defendant seeks a 75% reduction in the lodestar figure proposed by Class Counsel. In order to obtain a reduction of the lodestar, a defendant may show that any of the factors noted above render either or both components of the lodestar unreasonable. *Perdue,* 130 S. Ct. at 1673. For example, the party objecting to the lodestar may show that the hourly rate is not justified by results obtained, that the hours claimed are excessive or improperly documented, or that the hours or the billing rates are unreasonable. *Id*.; s*ee also Hensley*, 461 U.S. at 437; *Quigley*, 598 F.3d at 959. After an examination of the factors noted above the Court concludes that Class Counsel's lodestar figure is unreasonable and should be reduced.

#### B.  Hours Billed

In assessing the reasonableness of the lodestar, district courts are to consider whether the hours of work claimed by counsel were in fact reasonably expended. A district court properly excludes from the lodestar calculation hours claimed on the

grounds that they are "excessive, redundant, or otherwise unnecessary." *Hensley*, at 434; *see also El-Tabech v. Clarke*, 616 F.3d 834, 841 (8th Cir. 2010).

Here Class Counsel contends that it exercised billing judgment to eliminate duplicative billing and reduced the hours claimed before submitting the request to the Court. Nonetheless, the Court's review of the documentation submitted persuades it that there are numerous redundant and duplicative entries, and that the hours claimed were not reduced sufficiently to account for the inefficiencies engendered by the involvement of three law firms in the case. Seven attorneys and two paralegals billed hours in this case, including three senior lawyers from different firms. In light of its relative simplicity, the Court finds that the case was overstaffed and an inordinate amount of time was spent on communications between the Plaintiffs' attorneys. *See, e.g.*, *Stutzka v. McCarville*, 243 Fed. App'x 195 (8th Cir. 2007) (affirming district court's reduction of $103,274.45 fee request to an award of $3,000.00 due to relative lack of complexity of case); *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (affirming district court's 50% reduction in lodestar based on limited results and simplicity of case as sound exercise of discretion).

Plaintiffs offer no persuasive reason for the involvement of three law firms in this case.[2] The time sheets do not indicate a division of duties and responsibilities among the firms designed to achieve efficiencies, and counsel offered no such division of responsibilities at the hearing. As a result, it appears that attorneys at each of the three

---

[2] At the hearing, class counsel offered only the justification that it is helpful to small or solo practitioners to have other counsel with whom to discuss issues.

firms often reviewed and revised the same documents.  They also expended a great deal of time communicating and coordinating with one another on issues that could have been resolved by one of the firms rather than all three.  *See* Doc. No. 54-3 (more than half of time entries for Armstrong refer to reviewing email from, and coordinating with, co-counsel).

For example, entries for the period from September 23 through 28, 2011, show that all three counsel reviewed and conferred with respect to a proposed motion for extension of time, expending a total of 7.25 hours on two exceedingly simple tasks.  Similarly, in late September and early October 2011, counsel expended a total of 7.5 hours of attorney time at the highest applicable rate on the administrative task of submitting two requests for admission pro hac vice.  *See* Doc. Nos. 54-1 at 2; 54-2 at 15-16; and 54-3 at 2.

There is no dispute that overall Class Counsel provided an acceptable level of legal services and a good result to the Class.  But there is no evidence that the involvement of three firms improved the level of services delivered or led to a more favorable outcome.  Rather the involvement of multiple law firms led to redundancy and duplicative billing.

In addition, Class Counsel claim the highest level of experience and expertise in class action cases and consumer cases, but nonetheless billed large amounts of time for tasks that counsel with expertise would be expected to handle with ease.  *See, e.g.*, Doc. Nos. 54-1 at 4-5; 54-2 at 15-16; and 54 -3 at 7-8 (reflecting that in late May and early June 2012 counsel spent a combined total of 40 billable hours developing the initial draft

of their fairly standard 22 page class action settlement agreement).  The notice thereafter had to be amended after the Court pointed out certain errors or omissions.  Additionally, between one-third and one-half of the 789 hours billed in the case were logged after March 23, 2012 when the parties reached a settlement in principle of the main claim in the case.  *See* Doc. Nos. 54-1, 54-2 and 54-3; *see also* Doc. No. 33.  Further, Plaintiffs billed for work performed before the class representatives bought the MetroLink tickets on which their claims are based.[3]

Plaintiffs charge that Defendant "over-lawyered" the case and engaged in unwarranted "aggressive tactics" that increased the number of hours Plaintiffs had to expend on the case.  *See Morales v. Farmland Foods, Inc*., No. 8:08CV504, WL 2013 WL 1704722, *8-9 (D. Neb. Apr. 18, 2013) (holding that a defendant cannot complain about "over-lawyering" when it "was aware that its litigation strategy would generate legal work, billing and fees" and the hours expended by plaintiffs' attorneys were "necessitated by the defendant's aggressive tactics").  Specifically, Plaintiffs cite to allegedly lengthy discovery battles, a "multi-pronged" motion to dismiss, and "two entire days" spent in court-ordered mediation.  Doc. No. 60.  A review of the Court file indicates that Plaintiffs overstate the complexity of the discovery disputes and the motion to dismiss which the parties eventually withdrew.  The motion to dismiss was a very simple one addressing the standard for pleading willfulness – an issue with which

---

[3]      Based on information provided by Class Counsel at the hearing, it appears the violation was first noticed by one of the Class Counsel, who thereafter coordinated with the second law firm.  Those attorneys thereafter contacted St. Louis counsel, who went to the Metro-Link station, confirmed the violation, and discussed with consumers who purchased tickets their willingness to serve as class representatives.

experienced Class Counsel should have been well-versed.  In addition, two days spent in mediation pale in comparison to the many months devoted almost exclusively but unsuccessfully to settlement of the attorney's fees issue.  Therefore, the Court does not agree Defendant employed unwarranted excessive and aggressive tactics to inflate the number of hours expended on the case.

On the basis of the forgoing, the Court finds that the fee requests are replete with unnecessary and duplicative billings, caused primarily by counsel's involvement of three law firms.  As such, the Court will reduce by one-half the number of hours claimed by each law firm.

### C. Hourly Rates

Class Counsel billed its contingency class action services at the following hourly rates:

**Armstrong Law Firm:  $650.00/hr.**

**Bock Law Firm, LLC (blended rate):  $408.88/hr.**

**Chant and Co.:  $550.00/hr.**

Under Eighth Circuit precedent, the Court properly considers whether the hourly rates Plaintiffs request are reasonable in light of prevailing rates in the community for comparable services by lawyers of reasonably comparable skill, experience, and reputation.  *See Moore v. City of Des Moines*, 766 F.2d 343, 346 (8th Cir. 1985).  When determining reasonable hourly market rates, district courts may rely on their own experience and knowledge of prevailing rates in the community.  *See Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2004); *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).  "A

reasonable [attorney's] fee is 'one that is adequate to attract competent counsel, but . . . [that does] not provide windfalls to attorneys.'" *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

The Court previously found that Class Counsel had sufficient expertise, skill and experience to handle this matter and that some of them had been successful at litigating class actions in the past. *See* Doc. No 51. The Court also has considered the declarations and biographical material submitted by lead counsel with respect to their expertise, experience and qualifications to handle this matter. *See* Doc. Nos. 53-2, 53-3 and 53-4.

Relying on a recent state-wide billing rate survey, Plaintiffs assert that the rates claimed here are reasonable and typical of the rates charged in the Saint Louis metropolitan area by partner-level plaintiff attorneys in class action litigation. Defendant asserts that the requested rates are excessive given the experience and expertise of Class Counsel and that the rates closely approach the highest rates paid to any attorney in the State.

Citing to a survey recently published in the Missouri Lawyers Weekly entitled "Billing Rates 2013," Class Counsel assert that partner-level plaintiffs' attorneys' contingency fee rates in Missouri (including class action litigation) range from $750 to $450 per hour. *See* "Billing Rates 2013" Missouri Lawyers Weekly, June 17, 2013. (Doc. No. 53-5 at 10.) They further assert that "class action partner-level attorneys bill between $650 to $600 per hour." Doc. No. 53, at 7. But the $750 per hour rate is charged by only one attorney, Edward "Chip" Robertson, Jr., a former Chief Justice of the Missouri Supreme Court, who lists that rate for appellate work. And the "$650 to

$600" rate cited appears to relate to only two partner-level attorneys in one firm. Plaintiffs provide no information from which the Court could conclude that the experience level of and type of litigation handled by those two attorneys is comparable to that of Class Counsel.  Class Counsel offer no affidavits, other than their own, to attest that the rates requested are reasonable.  Further, rates at the highest level listed in the survey appear anomalous and unwarranted in this relatively simple, straightforward FACTA case where there was no real question as to liability, and Plaintiffs offered no evidence, whatsoever, of any willful violation.

There is no indication that the services provided here were exceptional or that the case involved complex or difficult questions.  Although class actions are generally viewed as complex cases, this particular class action was fairly simple and was not hard fought or protracted except with respect to the question of attorney's fees.  Moreover, the case involved a relatively small class of local claimants.  *See Quigley v. Winter*, 598 F.3d at 958-59.  In addition, the Court finds the requested hourly rates unreasonable given the lack of complexity in the case and the minimal amount of time devoted to litigation of the substantive issues in the case.

The lack of complexity also makes plain a second factor that causes the rates charged to be excessive.  Much of the work necessary to Plaintiffs' case consisted of fairly routine tasks, such as modification of form complaints, review of basic discovery, and the drafting of fairly standard settlement documents and notices.  Such work can and should be performed by attorneys and, when appropriate, paralegals, at significantly lower rates, under the supervision of a more experienced attorney at a higher rate.  And

yet, Plaintiffs made little effort here to achieve any such efficiencies.  For example, the Armstrong timesheets show on August 15, 2011, 0.7 hours researching and circulating to co-counsel pro hac vice procedures; 1.4 hours preparing summonses and cover sheets for state filing; and 1.6 hours to travel to court, file the petition, pay fees and submit summonses, for a total of 3.7 hours.  This work, which could have been done by a paralegal, is all billed at $650 per hour, for a total of $2,405.00.

      Only the Bock Firm used attorneys at lower billing rates, but the hours charged at lower rates are for less than those charged by Attorney Doherty.  The time records reflect 163.90 hours by Dougherty at $585 per hour, while Smith billed 63 hours at $395 per hour, Ludwig billed 8.3 hours at $300 per hour, Vincent billed 64.8 hours at $300 per hour, and Bullimore billed 16.4 hours at $245 per hour.  While the Bock Firm's billing does reflect some paralegal time, the bulk of the entries with respect to one of the two paralegals appear to relate to research and activities regarding the request for attorneys' fees.

      Indeed, notwithstanding the strong opposition to the fee request, Plaintiffs offered no explanation at the hearing for why this case required staffing by three senior lawyers, at rates of $550, $585, and $650 per hour.  The Court can see no reason why this case required that the vast majority of the work be done by three senior attorneys, especially where, as here, counsel assert that rates as high as $650 per hour – which are among the highest in the area – are justified because of counsels' extensive experience with this very type of class action case.  And such staffing is especially unjustified here, as counsel

were in a position early on to determine there was no question of liability, no evidence of actual damages, and apparently little if any evidence of willfulness.

Although Class Counsel undertook this case on a contingent basis, the Court cannot conclude that the case presented a significant financial risk for Class Counsel in light of the fact that technical violation of the FACTA would have been evident to counsel with little expertise in the field.  In addition, from the outset of the suit, Defendant corrected its conduct to avoid future or continuing violations.  Finally, although Class Counsel may have committed substantial resources to the investigation, prosecution, and settlement of the case there is no evidence that Class Counsel had to forgo other opportunities in order to pursue and resolve this matter.

The Court concludes that based on the above facts, the requested hourly rates in this case are unreasonably high under prevailing community standards.  The Court does not question the ethics or abilities of Class Counsel or their success in this case.  The Court is also mindful of the important public purpose that can be served by class action litigation, especially in cases involving small amounts of loss by class members.  And of course, Congress had made the determination that litigants who are successful in claims brought under consumer protection statutes should receive an award of fees, in part to encourage private enforcement.  But none of these commendable goals justify needless involvement by multiple law firms, or work done at excessively high rates with little effort to achieve efficiencies.

Taking into account all of the factors considered above, the Court concludes that a fee of $500.00/hour for lead counsel from each firm is more than reasonable here.  The

Court will employ this rate for Matthew Armstrong, Richard Doherty, and Chant Yedalian. The Court will not employ the blended rate submitted on behalf of the Bock Law Firm, but will adopt instead the individual rates noted for the other attorneys and paralegals whose time was billed by the Bock Law Firm.[4]

### D. Revised Lodestar

On the basis of the foregoing, the Court approves an award of attorney's fees derived from a one-half reduction in the number of hours submitted by the parties multiplied by an hourly rate of $500.00 for each of the three lead attorneys and by the individual rates designated on the time sheets for all other personnel from the Bock Law Firm. Even with this reduction, the three primary attorneys will receive a total of $146,130 for a total of 292.26 hours of work, and Class Counsel overall will receive $176,541.50, as set forth below. The Court finds this amount to be more than reasonable in light of the nature and complexity of the case and the work required.[5]

Armstrong Law Firm

102.60 hours x $500 per hour = **$51,300.00**

---

[4] Use of the blended rate for Bock Law Firm personnel results in a higher total fee than does the use of individual rates. Because the individual rates more accurately reflect the expertise of each individual who worked on the case, the Court declines to apply the blended rate here.

[5] Although the Court does not factor in the amount of the actual class recovery, the total of which could not be known at the time of settlement, the Court notes, in passing, that even as reduced, the attorneys' fees are more than 237 times the amount of the class recovery.

Bock Law Firm, LLC

Smith:  31.5 hours x $395 per hour = $12,442.50

Ludwig:  4.15 hours x $300 per hour = $1,245.00

Vincent:  32.4 hours x $300 per hour = $9,720.00

Bullimore:  8.2 hours x $245 per hour = $2,009.00        = **$71,416.50**

Dougherty:  81.95 hours x $500 per hour = $40,975.00

Schneider:  16.05 hours x $150 per hour = $2,407.50

Findlay:  17.45 hours x $150 per hour = $2,617.50

Chant and Co.

107.71 hours x $500.00 per hour = **$53,855.00**

**Total Revised Lodestar** = **$176,571.50**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion to recover expenses in the amount of **$14,022.21** is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiffs' request for approval of incentive payments in the amount of **$2,500.00** to each of the two class representatives, Nancy Albright and Sarah Rodhouse is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs' motion for an award of attorney's fees is **GRANTED, in part**.

**IT IS FURTHER ORDERED** that Plaintiffs shall receive an attorney's fee award in the amount of **$176,571.50** to be apportioned among the three law firms as set forth in this Memorandum.  (Doc. No. 52.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 11th day of September, 2013.